UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MOHAMMED ABUZIYADA, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL NO. SA-25-CV-1658-OLG |
| THE GEO GROUP *et al.*, | § § | |
| Respondents. | § § | |

**O R D E R**

Pending before the Court is Petitioner Mohammed Abuziyada's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Dkt. No. 1), to which Respondents filed a response (Dkt. No. 9), and Petitioner filed a reply (Dkt. No. 10). For the reasons that follow, the Petition (Dkt. No. 1) is **GRANTED IN PART** as set forth below.

## I.   BACKGROUND

The material facts of this case are not in dispute. Petitioner is a stateless individual who lived most of his life in Gaza. *See* Dkt. Nos. 1 at 3–4; 9 at 2. On September 8, 2023, Petitioner entered the United States without inspection and surrendered himself to immigration authorities. *See* Dkt. Nos. 1 at 4; 9 at 2; 9-1 at 2. Initially, Petitioner was placed in expedited removal proceedings. *See* Dkt. Nos. 1 at 4; 9 at 2; 9-1 at 2. However, he sought asylum and, after receiving a positive credible fear determination from an asylum officer, he was placed in full removal proceedings. *See* Dkt. Nos. 1 at 4; 9 at 2; 9-1 at 2. On October 4, 2024, an immigration judge ordered Petitioner removed from the United States and denied his claims for asylum, withholding of removal, and protection under the Convention Against Torture. *See* Dkt. Nos. 1 at 4; 1-1; 9 at 2; 9-1 at 2. He has been in Immigration and Customs Enforcement ("ICE") custody since his initial detention on September 8, 2023. *See* Dkt. Nos. 1 at 2–3; 9-1 at 2–4.

For the last year, Enforcement and Removal Operations ("ERO"), a division of ICE, has attempted to remove Petitioner to Gaza. On May 12, 2025, ERO submitted Petitioner's removal packet to Israel, but Israeli authorities refused to accept him, apparently due to the ongoing conflict between Israel and Gaza. *See* Dkt. No. 9-1 at 3. On September 14, 2025, ERO attempted to have Petitioner flown to Israel, but the route was "sold out." *Id.* While ERO sought to reschedule the flight, Israeli authorities indicated that Israel "could not support the new arrival date." *Id.* at 4. Thrice thwarted, ERO determined that Petitioner would need to be removed to a third country or "wait for the Government of Israel to approve [his] crossing." *Id.* According to ERO, the approval process takes between three and six months. *Id.*

## II. LEGAL STANDARD

A district court may issue a writ of habeas corpus when a federal detainee is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). While many statutory provisions limit judicial review in the immigration context, "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

## III. ANALYSIS

"Once an alien is ordered removed, the Department of Homeland Security ("DHS") must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)); however, "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, --- F. Supp. 3d ---, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231). "Although the statute does not specify a

time limit on how long DHS may detain an alien in the post-removal period," post-removal detention may last no longer than what is "reasonably necessary to bring about the alien's removal." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689). Recognizing that not all reasonably foreseeable removals can be accomplished within the three-month removal period, the Supreme Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Zadvydas*, 533 U.S. at 701. After that point, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

Petitioner's detention plainly falls outside of the presumptively constitutional period of detention. And Petitioner has met his initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Since his order of removal became final, Petitioner has been detained for more than a year. During that time, ERO repeatedly failed to effectuate his removal to Gaza and, in fact, appears to have made little progress to that end. Dkt. Nos. 1 at 4–5, 7; 9-1 at 3–4. Indeed, as Respondents concede, Petitioner's removal has been "complicated by the war in the region." Dkt. No. 9 at 6; *see* Dkt. No. 10 at 3 (asserting that the conflict between Israel and Gaza has "all but halted removals"). These facts, paired with Petitioner's lengthy period of detention, provide good reason to believe that he will not be removed in the reasonably foreseeable future. Accordingly, Respondents bear the burden of introducing "evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. They have not met that burden here.

Respondents provide no evidence that they have taken any recent actions to effectuate Petitioner's removal to Israel, Gaza, or any third country of removal. *See* Dkt. No. 9-1. Instead, Respondents appear to be waiting "for the Government of Israel to approve [his] crossing." *Id.*

at 4. While that process apparently takes between three and six months, ERO submitted Petitioner's removal packet to Israel approximately nine months ago, yet he has not been removed. *Id.* at 3. Furthermore, the recent armed conflict between Israel and Gaza complicates the removal process. In light of Petitioner's lengthy period of detention, these facts cast serious doubt on Respondents' ability to remove Petitioner in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior post[-]removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."). At most, Respondents' evidence substantiates a "remote possibility of . . . eventual removal," which is insufficient to meet their burden. *See Balouch v. Bondi*, No. 25-CV-216, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted); *see also Misirbekov v. Venegas*, No. 25-CV-168, 2025 WL 3033732, at *2 (S.D. Tex. Oct. 29, 2025) (concluding that, where the petitioner had been detained for nine months, "the lack of progress in removing" him made his "removal unlikely in the foreseeable future").

## IV.   CONCLUSION

For the foregoing reasons, the Petition (Dkt. No. 1) is **GRANTED IN PART** in that Respondents shall **RELEASE** Petitioner under appropriate conditions of release, fashioned at the discretion of DHS, within **48 hours of the entry of this Order**.

The Petition (Dkt. No. 1) is **DENIED IN PART** to the extent Petitioner seeks to recover attorney's fees under the Equal Access to Justice Act. *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) ("[T]he EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions."), *cert. denied*, 144 S. Ct. 553 (2024).

This case is **CLOSED**.

**IT IS SO ORDERED.**

**SIGNED** on February 13, 2026.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE